**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| RAYMOND RABE and | § | |
| IRMA RABE, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 4:11-cv-787 |
| | § | |
| WELLS FARGO BANK, N.A. | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the court is Defendant's Motion for Summary Judgment and Brief in Support (Dkt. 19), Plaintiffs' Response (Dkt. 21), and Defendant's Reply (Dkt. 23). Having considered Defendant's motion and the briefs of the parties, the court is of the opinion that Defendant's Motion for Summary Judgment should be **GRANTED**. Defendant's Opposed Motion to Extend Mediation Deadline (Dkt. 24), and the parties' Agreed Motion to Continue Final Pretrial Conference (Dkt. 30) are **DENIED AS MOOT**.

### I. JURISDICTION AND VENUE

Jurisdiction is proper in this court under 28 U.S.C. §§ 1332(a)(1) and 1367. Venue is proper under 28 U.S.C. § 1391(b)(2).

### II. BACKGROUND

Plaintiffs Raymond and Irma Rabe purchased the property at 758 Holly Oak Drive, Lewisville, Texas 75067 in the spring of 2000.[1] They refinanced the mortgage on April 25, 2002.[2] After the refinance, the Note was payable to Mortgage Resource Group, LLC in the amount of $125,965.00 with an interest rate of 7.00% per year, secured by a Deed of Trust on the

---

[1] Pet. ¶ 11.
[2] Pet. ¶ 11.

property.[3] Mortgage Resource Group, LLC assigned the Note and Deed of Trust to Wells Fargo.[4]
In November 2009, Plaintiff Raymond Rabe lost his vending machine business, and Plaintiff
Irma Rabe was laid off from her job with AT&T.[5] Plaintiffs did not immediately find work, and
Plaintiff Irma Rabe's mother became ill in May 2010[6]—further adding to their financial
misfortune. As a result, Plaintiffs fell behind on their mortgage payments in late 2010.[7] Plaintiffs
contend that they contacted Wells Fargo to discuss their situation and that Wells Fargo assured
them that "it would work with them to get caught up."[8]

A monthly statement provided by Plaintiffs shows that as of February 18, 2011, Plaintiffs
owed $3,766.01[9] (most likely three monthly payments and late fees). At some point in February
2011, Plaintiffs made a payment of $1,271.64.[10] Plaintiffs' March statement indicates a total of
$3,786.01 was due on April 1, 2011.[11] Plaintiffs then submitted a second payment of $1,122.73
sometime in March 2011.[12] Wells Fargo placed the second payment in a "suspense account"
because it was not sufficient to bring the account current.[13] Plaintiffs claim that they contacted
Wells Fargo and were told to "keep making payments as they could and not to worry."[14] On
April 10, 2011, Wells Fargo sent a certified letter to each Plaintiff notifying them that they were

---

[3] Pet. ¶ 11; Mot. Summ. J. ¶ 1.
[4] Mot. Summ. J. ¶ 6.
[5] Pet. ¶ 12.
[6] Pet. ¶ 12.
[7] Pet. ¶ 12; Mot. Summ. J. ¶ 8.
[8] Pet. ¶ 12; Pl.'s Resp. 3.
[9] Pl.'s App. 0010
[10] Pet. ¶ 12; Pl.'s Resp. 3; Pl.'s App. 0006-0007.
[11] Pl.'s App. 0011.
[12] Pet. ¶ 12; Pl.'s Resp. 3; Pl.'s App. 0006-0007.
[13] Pet. ¶ 12; Pl.'s Resp. 3; Def.'s Reply ¶ 10.
[14] Pet. ¶ 12; Pl.'s Resp. 3; Pl.'s App. 0006-0007.

in default and that to cure the default, they had to pay $2,669.37 by May 10, 2011.[15] Plaintiffs

did not make any payments between April 10, 2011, and May 10, 2011.[16]

Around June 1, 2011, Plaintiffs attempted to make a third payment of $1,271.64 and

submitted it to Wells Fargo with a note indicating that they would send another check ten days

later.[17] The third payment was returned to Plaintiffs. At this point, it appears that Plaintiffs were

at least five monthly payments behind. Plaintiffs allege that after their third payment was

returned, they called Wells Fargo and were told that a payment of $3,200 was required to bring

their account current. Plaintiffs claim that they paid $3,200 in July 2011, but the payment was

never posted to their account nor returned to them.[18]

Plaintiffs further contend that they attempted to make a payment of $5,000 over the

phone around August 1, 2011, but Wells Fargo refused to accept it.[19] Plaintiffs did not provide

any documentation of this attempted payment other than their own statements. Plaintiffs further

claim that around this time Wells Fargo advised them that they qualified for a loan modification

to lower their interest rate and requested that Plaintiffs show proof of funds.[20] Plaintiffs allege

they submitted the requested information.[21] Defendant has provided the court with a handwritten

letter received from Plaintiffs via fax on August 1, 2011, explaining the reasons they fell behind

---

[15] Mot. Summ. J. ¶ 9; Dolan Aff. Ex. D. The court notes that Plaintiffs allege that this letter was
not sent certified mail as required by Texas Property Code § 51.002(d), however, the letter
submitted to the court indicates that it was sent certified mail numbers 7196 9006 9295 1285
2124 and 7196 9006 9295 2131. This letter also indicates that an amount was designated as
"Unapplied Funds" and deducted it from total amount owed by Plaintiffs.
[16] Mot. Summ. J. ¶ 9; Dolan Aff. Ex. D.
[17] Pet. ¶ 12; Pl.'s Resp. 3.
[18] Pet. ¶ 13; Pl.'s Resp. 3. Plaintiffs did not provide copies of any cancelled checks or any other
evidence to verify this allegation. Plaintiffs also assert that Wells Fargo accepted payments from
them after the April 10 letter, but have provided no evidence other than their affidavits to support
this claim.
[19] Pet. ¶ 13; Pl.'s Resp. 3.
[20] Pet. ¶ 13; Pl.'s Resp. 3.
[21] Pet. ¶ 13.

on their payments and indicating that they were able to resume payments.[22] In the letter, Plaintiffs indicate that they have $5,000 in their checking account that they could pay immediately, but there is nothing attached to the letter that would show "proof of funds."[23] Plaintiffs further allege that when they called to follow up, Wells Fargo said they qualified for a loan modification, that the foreclosure would not proceed, and that Wells Fargo would send them information regarding their new payment schedule.[24] Plaintiffs contend they called a second time to follow up on the loan modification and were told that they should receive the new information "soon."[25] It is unclear on what date these purported contacts took place.

On August 10, 2011, Wells Fargo's foreclosure counsel sent each Plaintiff a correctly addressed, certified letter notifying them that their loan had been accelerated and that a foreclosure sale was scheduled on September 6, 2011.[26] The letter indicates that it is intended to be formal notice that: (1) the mortgagee elected to accelerate maturity of the debt; (2) the foreclosure sale was scheduled for Tuesday, September 6, 2011; (3) all of the obligors of the debt have the right to reinstate the loan as provided in the deed of trust and by applicable Texas law; and (4) all of the obligors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure that they have.[27] Plaintiffs allege that they did not receive the letter until September 17, 2011, because it was addressed incorrectly (to 758 Holly *Pak* Drive instead of 758 Holly *Oak* Drive).[28] The evidence provided by Wells Fargo shows that the August 10 letter was correctly addressed to Plaintiffs at 758 Holly Oak Drive,

---

[22] Def.'s Ex. 5.
[23] Def.'s Ex. 5; Pl.'s App. 0012-0013 ("Transmission Verification Report").
[24] Pet. ¶ 13; Pl.'s Resp. 3-4.
[25] Pet. ¶ 13; Pl.'s Resp. 4.
[26] Mot. Summ. J. ¶ 13.
[27] Dolan Aff. Ex. F.
[28] Pet. ¶ 13.

Lewisville, Texas 75067 and was sent by certified mail numbers 7160 9668 9670 5732 9748 and 7160 9668 9670 5732 9762. [29]

Wells Fargo sent a third letter to Plaintiffs on September 1, 2011, notifying them that they were not eligible for a loan modification because Wells Fargo had been unable to contact them and therefore had not obtained the necessary documents to process a modification request. [30] The September 1 letter is incorrectly addressed to 758 Holly *Pak* Drive. [31] Plaintiffs allege that they did not receive this letter until after the property had been sold at the foreclosure sale.

Wells Fargo foreclosed on the property on September 6, 2011, and was the successful bidder at the foreclosure auction. [32] At some point, after learning of the foreclosure, Plaintiffs contacted Wells Fargo and suggested that they could pay off the entire remaining balance. [33] Plaintiffs were told to fax a letter to the foreclosure department enclosing a copy of their bank statement to prove that they had sufficient funds to pay the entire balance, and it appears they complied on September 21, 2011. [34] The letter Plaintiffs faxed to Wells Fargo, addressed to "Jennifer Coolong, Foreclosure Liaison," at first indicates that it is a request for a full pay-off amount, but then asks Wells Fargo to "reconsider to reinstate our loan!" [35] Plaintiffs allege that they made several calls to Wells Fargo around September 21 and that several Wells Fargo employees were rude and gave them conflicting instructions on how to proceed. [36]

---

[29] Dolan Aff. Ex. F.
[30] Mot. Summ. J. ¶ 10; Dolan Aff. Ex. G.
[31] Dolan Aff. Ex. G. The court notes that Plaintiffs also provided copies of their monthly mortgage statements, which are addressed to 758 Holly Pak Drive.
[32] Mot. Summ. J. ¶ 1.
[33] Pet. ¶ 14.
[34] Pet. ¶ 14; Pl.'s Resp. 4; Pl.'s App. 0026-0032.
[35] Pl.'s App. 0028.
[36] Pet. ¶ 15; Pl.'s Resp. 4.

Later, Plaintiffs received an eviction notice and again were advised to fax proof of funds to Wells Fargo.[37] On October 21, 2011, Plaintiffs received a call indicating that Wells Fargo had agreed to rescind the foreclosure if Plaintiffs came to the eviction hearing with a cashier's check in the amount of $121,934.07.[38] Plaintiffs, after advising Wells Fargo that they had the ability to pay off the note, decided that they "did not want to spend all their savings, just get current or a loan modification to lower their house payment."[39] Plaintiffs then filed this suit in state court on November 3, 2011.[40] Plaintiffs' complaint alleges claims for (1) breach of contract; (2) anticipatory breach of contract; (3) breach of the duty of good faith and fair dealing; (4) unreasonable collection efforts; (5) violations of the Texas Finance Code; (6) negligent misrepresentation; (7) suit to quiet title and trespass to try title; (8) accounting, (9) declaratory judgment; (10) specific performance; and (11) malice. Wells Fargo removed the case to this court.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] Substantive law determines which facts are material.[42] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[43] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually

---

[37] Pet. ¶ 16.
[38] Pet. ¶ 16; Pl.'s Resp. 5. Plaintiff Irma Rabe alleges in her affidavit that proof of funds was sent twice, but no fax receipt or any other documentation has been provided by Plaintiffs.
[39] Pet. ¶ 16.
[40] Mot. Summ. J. ¶ 1.
[41] FED. R. CIV. P. 56(a).
[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[43] *Id.*

unsupported claims or defenses."[44] Therefore, in deciding whether to grant a motion for summary judgment, the court must consider whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[45] The court must construe all facts and inferences in the light most favorable to the nonmoving party.[46] When "the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case."[47] Summary judgment is appropriate when the evidentiary material of record, when reduced to admissible evidence, would be insufficient to permit the nonmoving party to carry its burden of proof.[48] The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and "may not rely upon the mere allegations or denials of his pleading."[49] "Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden."[50]

## IV. BREACH OF CONTRACT

To prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach."[51] Plaintiffs claim that Defendant breached the terms of the

---

[44] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[45] *Anderson*, 477 U.S. at 250.

[46] *See Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).

[47] *Payne v. Sw. Bell Tel., L.P.*, 562 F. Supp. 2d 780, 783 (E.D. Tex. 2005).

[48] *See Celotex*, 477 U.S. at 327.

[49] *Id.* at 322 n. 3; *see also* FED. R. CIV. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").

[50] *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (internal quotation marks omitted).

[51] *Oliphant Fin., LLC v. Patton*, No. 05-17-01731, 2010 WL 936688, at *3 (Tex. App.—Dallas Mar. 17, 2010, pet. filed) (mem. op.); *see also Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

contract encompassed in the Note and Deed of Trust by failing to comply with HUD regulations and Texas law, thereby waiving its right to accelerate the debt and foreclose on the property.

The parties do not dispute the existence of a valid contract arising out of the Note and Deed of Trust. Defendant argues that Plaintiffs cannot establish that they complied with their contractual obligations because they failed to make the required monthly payments and therefore cannot bring a claim of breach against Wells Fargo.[52] The court agrees.[53] Plaintiffs admit that they fell behind on their mortgage payments and have not made any allegation that the default was in any way caused by Wells Fargo.

Nonetheless, in an abundance of caution, the court will address each basis for Plaintiffs' breach of contract claim because Plaintiffs assert that Defendant breached the contract by violating those terms of the contract that apply in the event that Plaintiffs were to first breach the contract by failing to make timely monthly payments.[54]  The possibility of Plaintiffs' default was specifically contemplated by the contract, so it is unlikely that the parties intended Plaintiffs' failure to make timely payments to be a material breach that would excuse Defendant from adhering to the foreclosure procedure set forth in the contract. If the Plaintiffs' default did excuse compliance with the contract by the Defendant, those terms of the contract would become unenforceable in a breach of contract action by mortgagors.[55]

---

[52] Mot. Summ. J. ¶¶ 18-19.

[53] *See Thomas v. EMC Mortgage Corp.*, No. 12-10143, slip. op. at 4-5 (5th Cir. Nov. 30, 2012) ("Under well-established principles of Texas contract law, that material breach would normally prevent [the Plaintiffs] from maintaining a breach-of-contract claim." (citing *Dobbins v. Redden*, 785 S.W.2d 977, 978 (Tex. 1990))).

[54] *See* Dolan Aff. Ex. A (Note), Dolan Aff. Ex. B (Deed of Trust). Sections 9, 10 and 11 of the Deed of Trust and Section 6 of the Note explain the procedure to be followed in the event Plaintiff fails to make timely payments.

[55] *See Sinclair v. Donovan*, No. 1:11-cv-00010, 2011 U.S. Dist. LEXIS 128220, at *27 (S.D. Ohio, Nov. 4, 2011) ("[I]t indeed would be an absurd result if the Lender Defendants were allowed to ignore the contract terms drafted to govern their post-default conduct on the grounds that the mortgagors have defaulted.").

Plaintiffs allege that Defendant violated six applicable laws and regulations integrated into the contract: (1) 24 C.F.R. § 203.604(b); (2) 24 C.F.R. § 203.604(e)(2); (3) 24 C.F.R. § 203.556(b); (4) 24 C.F.R. § 203.606; (5) Texas Property Code § 51.002(d) and (6) Texas Business and Commerce Code §§ 1.201 and 9.102(c). Wells Fargo avers that it complied with all of the applicable laws and regulations.[56]

The court must first address Defendant's argument that HUD regulations do not provide a private cause of action.[57] This argument, although correct, is inapposite. Plaintiffs contend that HUD regulations "are part of an integrated contract to which Defendant is bound to comply" as specified in section 6(B) of the Note[58] and sections 9(a)[59] and 9(d)[60] of the Deed of Trust.[61] Wells Fargo does not dispute that the HUD regulations are incorporated into the agreement. Although the HUD regulations at issue "deal only with the relations between the mortgagee [Wells Fargo] and the government, and give the mortgagor [the Rabes] no claim to duty owed

---

[56] Mot. Summ. J. ¶¶ 26-31.
[57] Mot. Summ J. ¶ 24.
[58] Section 6(B) entitled "Default" states: "If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee."
[59] Section 9 entitled "Grounds for Acceleration of Debt," part (a) states: "Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if: (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument."
[60] Section 9, part (d), entitled "Regulations of HUD Secretary" states: "In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by the regulations of the Secretary."
[61] Pet. ¶ 24.

nor remedy for failure to follow,"[62] Plaintiffs have not asserted a separate and distinct cause of action based solely on violation of the HUD regulations.[63] Instead, Plaintiffs claim that Wells Fargo breached the terms of the parties' agreement by not complying with the regulations, which are integrated into the contract.[64] Because HUD regulations are explicitly incorporated into the parties' contract, "failure to comply with the regulations . . . may give rise to liability on a contract."[65] "Indeed, courts have recognized that claims for failure to comply with the HUD regulations in question are best classified as a breach of contract."[66]

### a.   24 C.F.R. § 203.604(b)

Plaintiffs first allege that Defendant failed to comply with 24 C.F.R. § 203.604(b), which requires the mortgagee to "have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." Wells Fargo asserts that the exception in 24 C.F.R. § 203.604(c)(2), that a face-to-face meeting is not required if the mortgaged property "is not within 200 miles of the mortgagee, its servicer, or a branch office of either," exempts it from compliance with the requirement.[67] Defendant admits that the regulation does not define "branch office" but explains that Wells Fargo, in reliance on HUD's interpretation of its own regulation, understands "the face-to-face meeting requirement referenced in 24 C.F.R. § 203.604 relates only to those

---

[62] *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-cv-0916-B, 2009 WL 1810336, at * 3 (N.D. Tex. June 24, 2009).
[63] Mot. Summ. J. ¶ 24
[64] Pet. ¶¶ 20-24; *see Baker v. Countrywide Home Loans, Inc.*, No. 3:08-cv-0916-B, 2009 WL 1910336, at * 5 (N.D. Tex. June 24, 2009) ("Indeed, courts have recognized that claims for failure to comply with HUD regulations in question are best classified as a breach of contract.").
[65] *Baker*, 2009 WL 1910336 at *5.
[66] *Id.*
[67] Mot. Summ. J. ¶¶ 28-29.

mortgagors living within a 200 mile radius of a *servicing* office."[68] District courts have come to

different conclusions as to the weight that HUD's interpretation is entitled.[69] The Northern

District of Texas, relying directly on this interpretation, held that where plaintiffs failed to point

to evidence that the branches nearest their residence were "servicing branches," the defendant

was entitled to summary judgment.[70] But the Eastern District of Virginia, after engaging in a

lengthy analysis of the deference courts are required to give to various types of statements and

rulings by administrative agencies, determined that HUD's website is not entitled to any

deference, and the clear meaning of the regulation is that if the defendant has *any* branch office

within 200 miles of the property, a face-to-face meeting is required.[71] Defendant has submitted

the affidavit of Michael Dolan, a Litigation Support Manager for Wells Fargo, stating that Wells

Fargo did not have a servicing office within 200 miles of the property.[72] Plaintiffs do not dispute

---

[68] Mot. Summ. J. ¶ 28 (emphasis added); Def.'s Ex. 3. Defendant's Exhibit 3 is "General Servicing Frequently Asked Questions" from the Department of Housing and Urban Development. It explains, "HUD's regulation 24 C.F.R. 203.604, Contact with the Mortgagor provides, 'the mortgagee must have a face to face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.' The Department is aware that many Mortgagees maintain 'branch offices' that deal only with loan origination and some of these offices may only be staffed part-time. For the most part, individuals that staff an origination office are not familiar with servicing issues and are not trained in debt collection or HUD's Loss Mitigation Program. The Department has always considered that the face-to-face meeting must be conducted by staff that is adequately trained to discuss the delinquency and the appropriate loss mitigation options with the mortgagor. Therefore, for the purpose of this discussion, the face-to-face meeting requirement referenced in 24 C.F.R. 203.604 relates only to those mortgagors living within a 200-mile radius of a servicing office."

[69] *See, e.g.*, *Mitchell v. Chase Home Finance, LLC*, Civil Action No. 3:06-cv-2099-K, 2008 WL 623395, at *4 (N.D. Tex. Mar. 4, 2008) (granting summary judgment where Plaintiffs failed to raise evidence that branch offices within 200 miles of the property were servicing branches); *Kersey v. PHH Mortgage Corp.*, 682 F. Supp. 2d 588, 602-05 (E.D. Va. 2010), *vacated on other grounds,* 2010 WL 3222262, (holding that HUD's website was not entitled to any deference and relying on the plain language of the regulation to hold that Defendant failed to comply with the face-to-face meeting requirement).

[70] *Mitchell,* 2008 WL 623395, at *4.

[71] *Kersey*, 682 F. Supp. 2d at 605.

[72] Def.'s Ex. 1 ¶ 16.

Defendant's claim that there is not a servicing center within 200 miles of the property.[73] Indeed, Plaintiffs' response quickly shifts focus to their next argument, and it appears Plaintiffs have abandoned their argument on this point.[74]

### b.  24 C.F.R. § 203.604(e)(2)(ii)

Plaintiffs next allege that Defendant violated 24 C.F.R. § 203.604(e)(2)(ii), which requires the mortgagee to "inform the mortgagor of other available assistance, if any."[75] Defendant asserts that it sent notices of default and intent to accelerate the loan,[76] provided Plaintiffs the opportunity to reinstate the loan, assigned a home preservation specialist to assist Plaintiffs with their loss mitigation options,[77] and considered Plaintiffs for a loan modification.[78] Moreover, the April 10 letter informs Plaintiffs that Wells Fargo is "required by federal law to notify you of the availability of government approved home ownership counseling agencies designed to help homeowners avoid losing their home. To obtain a list of approved counseling agencies for your state please call 1-800-569-4287." In response, Plaintiffs simply point out that the only written information that they received related to loss mitigation efforts was Defendant's September 1 letter, which was incorrectly addressed and therefore did not arrive until after the September 6, 2011, foreclosure sale.[79] The September 1 letter merely informs Plaintiffs that they do not qualify for a modification because Wells Fargo was unable to reach them to discuss their situation. The letter does not appear to be an attempt to inform Plaintiffs of what assistance was

---

[73] Pl.'s Resp. 13.
[74] Pl.'s Resp. 13 ("Defendant claims that there is not a servicing center within 200 miles of Plaintiffs' property. Plaintiffs do not have any evidence to dispute that. However, Defendant was also required to inform Plaintiffs of other options available.").
[75] Pet. ¶ 26.
[76] Dolan Aff. Ex. D; Def.'s Reply ¶ 9.
[77] Dolan Aff. Ex. G; Def.'s Reply ¶ 9; Pl.'s App. 0016.
[78] Def.'s Reply ¶ 9.
[79] Pl.'s Resp. 14.

available. Plaintiffs have not pointed to any evidence that Wells Fargo did not inform them of other available assistance that existed.

### c.   24 C.F.R. § 203.556(b)

Third, Plaintiffs allege Defendant violated 24 C.F.R. § 203.556(b), which states that

> (e)xcept as provided in this section, the mortgagee shall accept any partial payment and either apply it to the mortgagor's account or identify it with the mortgagor's account and hold it in a trust account pending disposition. When partial payments held for disposition aggregate a full monthly installment they shall be applied to the mortgagor's account, thus advancing the date of the oldest unpaid installment but not the date on which the account first became delinquent.

Plaintiffs argue that Defendant failed to accept partial payments and either apply them to Plaintiffs' account or hold them in trust.[80] Specifically, Plaintiffs allege that they attempted to make a payment of $1,271.64 on June 1, 2011, that was returned, a $ 3,200 payment in July 2011 that was neither returned to them nor posted to their account, and a $5,000 payment in August 2011 that was refused.[81]

24 C.F.R. § 203.556(d) explains that

> (i)f the mortgage is in default, a partial payment may be returned to the mortgagor with a letter of explanation in the following circumstances: (1) When payment aggregates less than 50 percent of the amount then due; (2) The payment is less than the amount agreed to in a forbearance plan, whether or not reduced to writing. . . (or) (4) Foreclosure has been commenced. (Foreclosure is commenced when the first action required for foreclosure under applicable law is taken.)

As of January 2011, it is undisputed that Plaintiffs were at least one month behind on their payments.[82] In February 2011, at which point Plaintiffs were presumably two months behind on their payments, they submitted a single payment that was accepted by Wells Fargo and applied to

---

[80] Pet. ¶ 26.
[81] Pet. ¶ 13.
[82] Pet. ¶ 12.

their account.[83] In March 2011, when Plaintiffs were still two months behind on their

mortgage,[84] Wells Fargo accepted a single payment and placed it in a suspense account pursuant

to section 556(b).[85] After foreclosure commenced on April 10, 2011, Wells Fargo did not accept

any further partial payments from Plaintiffs. The only evidence submitted by Plaintiffs showing

an attempt at a partial payment after April 10, 2011 was the June 1, 2011 check that was returned

by Wells Fargo with a note indicating that their mortgage was in foreclosure.

### d.   24 C.F.R. § 203.606(a)

Fourth, Plaintiffs allege that Defendant violated 24 C.F.R. § 203.606(a), which states that

the "mortgagee may not commence foreclosure for a monetary default unless at least three full

monthly installments due under the mortgage are unpaid after application of any partial

payments that may have been accepted but not yet applied to the mortgage account." In support

of this argument, Plaintiffs allege that they were not aware that they were three months behind

on their payments at the time that Wells Fargo began returning payments.[86] However, Plaintiffs'

awareness of whether they were three months behind is irrelevant. Plaintiffs have not denied and

have not put forth any evidence to show that they were *not* three months behind when Defendant

commenced foreclosure proceedings on April 10, 2011.

### e.   TEXAS PROPERTY CODE § 51.002

Fifth, Plaintiffs allege that Defendant "never gave Plaintiffs a notice of default, notice of

intent to accelerate, or the right to cure and reinstate the Note" as required by the Texas Property

Code. Section 51.002(d) of the Texas Property Code requires the mortgage servicer of the debt to

"serve a debtor in default under a deed of trust or other contract lien on real property used as the

---

[83] Pet. ¶ 12.
[84] Pl.'s App. 0011.
[85] Pet. ¶ 12.
[86] Pet. ¶ 27.

debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." Wells Fargo acknowledges that Texas common law also requires that the mortgagor be notified of the mortgagee's intent to accelerate the debt.[87] Wells Fargo's April 10 letter, sent by certified mail and correctly addressed, specifically states that "your loan is in default;" that the total delinquency as of April 10, 2011, was $2,669.37; "(t)o avoid the possibility of acceleration you must pay this amount on or before May 10, 2011"; and that " (i)f funds are not received by the above referenced date, we will proceed with acceleration." This notice complies with section 51.002(d)—it was sent via certified mail, stated that the debtor is in default, and gave the debtor thirty days to cure the default. The April 10 letter also notified Plaintiffs of Wells Fargo's intent to accelerate in the event the default was not cured by May 10, 2011.

In their response to Defendant's motion, Plaintiffs also assert that Defendant violated section 51.002(b) of the Texas Property Code. Section 51.002(b)(3) requires that notice of a foreclosure sale, "which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." The August 10 letter from Defendant's foreclosure counsel gave notice that the mortgagee had elected to accelerate the debt and that the foreclosure sale would take place twenty-six days later on September 6, 2011. The notice specifies that the sale would begin at the earliest by 10:00a.m. This notice complied with the requirements of section 51.002(b).

---

[87] *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982).

Plaintiffs assert at various points in their Petition and Response that they did not receive any of the required notices because they were incorrectly addressed. Section 51.002(e) of the Texas Property Code provides: "Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." Defendants need not prove that Plaintiffs actually received the notices—constructive notice is all that is required.[88] The only letters in evidence that are incorrectly addressed are Plaintiffs' monthly mortgage statements, the September 1 letter, and the September 8 letter. None of these letters served as the notices required by law. The letters that were intended to comply with statutory requirements, the April 10 letter and the August 10 letter, were properly addressed and sent certified mail.

Alternatively, Plaintiffs argue that even if all of Defendant's notices complied with the applicable regulations and statutes that the notices were "withdrawn." Plaintiffs assert that because Wells Fargo told them they were qualified for a loan modification and because the notice of acceleration fails to state the amount necessary to cure the default, Wells Fargo withdrew its foreclosure notifications. Plaintiffs have not provided any authority nor pointed to any evidence to support this claim. There is no applicable statute or regulation that requires a notice of acceleration to state the amount necessary to cure a default. Nevertheless, Defendant's April 10 letter, which indicates that acceleration will occur if the default is not cured by May 10, 2011, does state the amount required to cure the default. Further, Plaintiffs have not provided any evidence to demonstrate that Wells Fargo "withdrew" its foreclosure notifications.

### f.   TEXAS BUSINESS AND COMMERCE CODE §§ 1.201 AND 9.102(c)

---

[88] *WTFO, Inc. v. Braithwaite,* 899 S.W.2d 709, 720 (Tex. App.—Dallas 1995, no writ).

Plaintiffs next argue that Defendant waived its right to foreclose by violating the requirement of good faith and fair dealing in the Texas Business and Commerce Code.[89] Section 1.201(20) defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Section 9.102(c) merely states that "Chapter 1 contains general definitions and principles of construction throughout this chapter." However, section 9.109(11) states that chapter nine of the Texas Business and Commerce Code does not apply to "the creation of an interest in or lien on real property." Therefore, these two sections are inapplicable in this context, "(b)ecause the Deed of Trust places a lien on *real* property."[90] Moreover, "Texas law does not 'recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power.'"[91]

### g.   WAIVER

Finally, Plaintiffs have asserted that Defendant's "unconscionable"[92] conduct led to a waiver of their right to foreclose on the property and have asserted several theories to support this argument. Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right."[93]

Plaintiffs' first theory is that Defendant delayed and misled Plaintiffs to the point of foreclosure. But this allegation is not supported by the evidence. Plaintiffs admit, and the

---

[89] Pet. ¶ 28.

[90] *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.—San Antonio 1998, no pet.) (emphasis in original); *see also* Tex. Bus. & Comm. Code § 3.104, cmt. 2 ("Article 3 is not meant to apply to contracts for. . . the sale or lease of real property or similar writings that may contain a promise to pay money.").

[91] *Watson v. Citimortgage*, 814 F. Supp. 2d 726, 731 (E.D. Tex. 2011) (citing *Coleman v. Bank of Am., N.A.*, No. 3-11-cv-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011)).

[92] "Unconscionability" is typically used to describe a contract that is unfair and therefore may be unenforceable. *See* 14 Tex. Jur. 3d Contracts § 178.

[93] *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).

evidence shows, that they were in default on their mortgage at the time Defendant initiated foreclosure proceedings. Plaintiffs have not raised any evidence to show that they were willing and able to cure the default by paying the entire arrearage at the time foreclosure proceedings commenced. There is no evidence to support Plaintiffs' allegations that Wells Fargo contributed to or caused Plaintiffs' default that led to foreclosure.

Plaintiffs next argue that Wells Fargo was required to give them an opportunity to pay past due installments before accelerating, and Defendant's actions prevented them from performing under the contract. First, Defendant's April 10 letter indicating the past due amount, when it was due, and where to send it, appears to be an opportunity to pay past due installments before acceleration. Wells Fargo's refusal of Plaintiffs' June 1, 2011, payment and the purported July and August 2011 payments occurred after acceleration and the commencement of foreclosure proceedings. There is no evidence that at any point Wells Fargo prevented Plaintiffs from tendering the full amount required to reinstate their loan before foreclosure.

Finally, Plaintiffs assert that Defendant waived its right to foreclose by failing to declare a default when it knew it could and by failing to give notice of default, intent to accelerate, right to cure, and right to reinstate. The terms of both the Deed of Trust and Note make clear that the lender's delay in exercising any of its options does not result in a waiver of those rights.[94] Further, as discussed above, Wells Fargo provided Plaintiffs with all the required notices to proceed with foreclosure on the property. Plaintiffs have not provided any contrary evidence.

Plaintiffs have not pointed to any evidence that Wells Fargo intentionally relinquished its right to foreclose or acted in a way inconsistent with claiming its right to foreclose. Accordingly, Defendant's motion for summary judgment on Plaintiffs' breach of contract claim is hereby **GRANTED**.

---

[94] *See* Dolan Aff. Ex. A ¶ 6(B), Dolan Aff. Ex. B ¶9(c).

## V. ANTICIPATORY BREACH OF CONTRACT

An anticipatory breach of contract "is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance."[95] To establish a claim for anticipatory breach of contract, a plaintiff must show: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party."[96] "An anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms."[97] But "the declaration of intent to abandon must be in positive and unconditional terms."[98]

Plaintiffs argue that Defendant repudiated its obligations by refusing to accept Plaintiffs' payments in violation of the contract and by failing to provide the amount necessary to cure the default so that Plaintiffs could reinstate their loan.[99] As explained above, Defendant did not refuse to accept payments in violation of the terms of the contract. Therefore, Defendant's refusal to accept the June 2011 payment or the alleged July and August 2011 payments cannot be construed as a repudiation of the contract.

Further, Plaintiffs have not raised any evidence to support their claim that Defendant failed to provide them with an opportunity to reinstate. Indeed, the April10 letter specifically states the amount necessary to cure the default as of the date of the letter. Thus, there can be no anticipatory breach based on a failure to provide Plaintiffs with an opportunity to reinstate. In fact, Plaintiffs' evidence contradicts their own assertion that had they simply known the amount necessary to cure the default, they would have paid it and cured the default. Throughout the events

---

[95] *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).
[96] *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004).
[97] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010).
[98] *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ).
[99] Pl.'s Resp. 17.

detailed by both Plaintiffs and Defendant, Plaintiffs repeatedly stated that they were doing the best that they could to pay their mortgage, but that they were in a difficult financial situation. Plaintiff Irma Rabe even describes in her response to Defendant's interrogatories that at the time foreclosure was proceeding, Plaintiffs' financial situation had deteriorated considerably and they were unable to pay their electricity bill.[100] Because Plaintiffs have failed to raise sufficient evidence on the first element of an anticipatory breach of contract claim, the court does not address the remaining elements. Defendant's motion for summary judgment on Plaintiffs' anticipatory breach of contract claim is **GRANTED**.

## VI. UCC GOOD FAITH AND FAIR DEALING

Plaintiffs next raise an independent cause of action based on the duty of good faith and fair dealing in the Uniform Commercial Code. However, as discussed above in the context of Plaintiffs' breach of contract claim, the UCC does not apply in a mortgage contract. "Because the Deed of Trust places a lien on *real* property, it is not governed by the UCC."[101] In fact, under Texas law, even a common-law duty of good faith and fair dealing "is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power."[102] "The relationship of a mortgagor and mortgagee ordinarily does not involve a duty of good faith."[103] Plaintiffs have alleged no facts, nor cited to any authority, to establish a "special relationship marked by shared trust or an imbalance in bargaining power."[104] Defendant's motion for summary judgment on this claim is **GRANTED**.

---

[100] Def.'s Reply. Ex. 1.

[101] *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.—San Antonio 1998, no pet.) (emphasis in original).

[102] *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990).

[103] *Id.*

[104] *Coleman v. Bank of Am., N.A.*, No. 3-11-cv-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011).

## VII.   UNREASONABLE COLLECTION EFFORTS

Under Texas law, "(u)nreasonable collection is an intentional tort."[105] "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case."[106] Pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to "a course of harassment" by the defendant that "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."[107] Plaintiffs assert that Defendant's actions were unreasonable and violate the ordinary standard of care. However, the standard for evaluating a claim of unreasonable collection efforts requires a showing of intent rather than negligence.[108]

Plaintiffs outline at least eight acts of Wells Fargo that they contend "exceed the bounds of reason."[109] Yet none of these actions rise to the level of conduct required to support this claim. Therefore, Defendant's motion for summary judgment on Plaintiffs' unreasonable collection effort claim is **GRANTED**.

## VIII.   TEXAS DEBT COLLECTION ACT AND TEXAS DECEPTIVE TRADE PRACTICES ACT

Plaintiffs seek damages under both the Texas Debt Collection Act ("TDCA") and the Texas Deceptive Trade Practices Act ("TDTPA"). Because Plaintiffs' rely on the alleged TDCA

---

[105] *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.).
[106] *Id.*; *see also B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009).
[107] *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011), *adopted by*, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011).
[108] *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 WL 4053794, at *19 (S.D. Tex. Oct. 14, 2010); s*ee also Thomas v. EMC Mortgage Corp*., No. 12-10143, slip. op. at 6 (5th Cir. Nov. 30, 2012) (noting the *Lathram* standard "has largely been disavowed by Texas courts"); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) ("[E]vidence of negligence is insufficient to support a cause of action for unreasonable collection efforts.").
[109] Pl.'s Resp. 19.

violations as the sole basis for their TDPTA claim,[110] the court will first turn to the merits of Plaintiffs' TDCA claim.

The TDCA prohibits debt collectors,[111] in debt collection,[112] from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt."[113] The TDCA also prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."[114] A statement is a misrepresentation if the defendant made "a false or misleading assertion."[115] The TDCA applies to foreclosure actions because "foreclosure actions inevitably involve a debt collection aspect." [116]

Plaintiffs allege that Defendant violated the statute by "misleading Plaintiffs into believing Wells Fargo would help Plaintiffs get their account caught up" and then "accept[ing] some payments and reject[ing] others."[117] Plaintiffs also assert that Wells Fargo "deceptively led Plaintiffs into believe [sic] they were qualified for a loan modification and that Wells Fargo

---

[110] *See* Pet. ¶¶ 33–34; *See* TEX. FIN. CODE ANN. § 392.404(a); TEX. BUS. COM CODE ANN. § 17.50(h) ("Notwithstanding any other provision of this subchapter, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally.").

[111] A debt collector is "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE ANN. § 392.001(6).

[112] Debt collection is "an action conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." TEX. FIN. CODE ANN. §392.001(5). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE ANN. § 392.001(2).

[113] TEX. FIN. CODE ANN. § 392.304(a)(8).

[114] *Id.* at § 392.304(a)(19).

[115] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010).

[116] *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 730-732 (N.D. Tex. 2011).

[117] Pl.'s Resp. 23.

would send Plaintiffs the written agreement with new payment information and date due."[118] Further, Plaintiffs argue that Wells Fargo refused to tell them where or how to pay the $12,469.25 plus $433.94 eviction fee to rescind the foreclosure, which Plaintiffs were willing and able to do. Finally, Plaintiffs claim that the September 8 letter misrepresented the status of their account because the foreclosure sale had already occurred and the letter indicated that the collection process would resume "if appropriate."[119]

Plaintiffs direct the court to no evidence showing that Defendant made false or misleading assertions regarding the character, extent, or amount of Plaintiffs' debt. "Discussions regarding loan modification are not representations, or misrepresentations, of the amount or character of the debt."[120] Moreover, Plaintiffs have pointed to no evidence that would permit a reasonable trier of fact to find that Defendant used "deceptive means" to collect a debt.

Plaintiffs also argue that their account "was assessed with wrongful charges and fees" that would not have been assessed had Defendant accepted Plaintiffs' partial payments "as required under HUD regulations."[121] Section 392.303(a)(2) of the Texas Finance Code prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." The Note expressly authorizes assessment of late payment fees.[122]Furthermore, as discussed above, Defendant complied with 24 C.F.R. § 203.556(b) by placing Plaintiffs' partial payment in a suspense account. Even if Defendant had applied the partial payment made in March 2011 to

---

[118] Pl.'s Resp. 23.
[119] Pl.'s Resp. 23.
[120] *See Watson v. Citimortgage*, No. 4:10-cv-707, 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012).
[121] Pl.'s Resp. 22.
[122] *See, e.g.*, Dolan Aff. Ex. A ¶ 6(A).

Plaintiffs' account, Defendant would still be entitled to assess late fees for the prior missed payments. Plaintiffs also highlight that the property sold at the foreclosure sale for $117,905.75 but that they owed $121,934.07 in October 2011, and that they only financed $125,965.00 in 2002, and that their loan history states that the principal balance on the loan was $111,022.12.[123] This is not evidence that Defendants were not expressly authorized to add interest and fees to Plaintiffs' loan. Further, Plaintiffs point to no evidence that Defendant used unfair and unconscionable means to collect interest, charges, fees or expenses incidental to the original obligation.

Section 392.301(a)(8) of the Texas Finance Code prohibits a debt collector from threatening to take an action prohibited by law. Plaintiffs allege that Defendant wrongfully caused its attorneys to foreclose on Plaintiffs' property because its right to "accelerate and foreclose had never matured because Defendant did not comply with the Deed of Trust."[124] As explained above in the context of Plaintiffs' breach of contract claim, this argument is misplaced. Further, section 392.301(b)(2)-(3) specifically authorizes debt collectors to threaten "to institute civil lawsuits or other judicial proceedings to collect a consumer debt," and the Deed of Trust specifically authorizes acceleration and foreclosure in the event Plaintiffs fail to make monthly payments.[125]

Because Plaintiffs have failed to demonstrate a genuine issue of material fact pertaining to their TDCA claim, Defendant's motion for summary judgment on Plaintiffs' TDCA and TDTPA claims is hereby **GRANTED**.

---

[123] Pl.'s Resp. 22.
[124] Pl.'s Resp. 21.
[125] Dolan Aff. Ex. B ¶ 9.

IX. **NEGLIGENT MISREPRESENTATION**

Under Texas law, a claimant alleging negligent misrepresentation must show the following:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.[126]

 "The misrepresentation at issue must be one of existing fact" rather than a promise of future conduct.[127]

Here, Plaintiffs allege that Defendant repeatedly misled Plaintiffs with false information regarding the status of their loan, the possibility of obtaining a loan modification, whether there had been a loan modification, and Defendant's intent to proceed with foreclosure. However, Plaintiffs' "attempt to characterize the banks' supposedly broken promises as 'existing facts' is unpersuasive and unsupported by the summary-judgment record."[128] Any representations made by Wells Fargo "regarding future loan modifications and foreclosure constitute 'promises of future action rather than representations of existing fact.'"[129] Defendant's motion for summary judgment on Plaintiffs' negligent misrepresentation claim is hereby **GRANTED**.

X. **QUIET TITLE AND TRESPASS TO TRY TITLE**

"To prevail in a trespass-to-try title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3)

---

[126] *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. Feb. 10, 2011) (citing *Fed. Land Bank Assoc. of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)); *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 30, 2011), *adopted by*, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011).
[127] *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 20, 2011), *adopted by*, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011).
[128] *Thomas v. EMC Mortgage Corp.*, No. 12-10143, slip. op. at 7 (5th Cir. Nov. 30, 2012).
[129] *Id.*

prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned."[130] "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title."[131]

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title.[132] To establish a claim for suit to quiet title, Plaintiffs must show the following: (1) an interest in a specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable.[133] An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable.[134]

Plaintiffs have not pointed to any evidence that Defendant's claim to title is invalid or unenforceable, nor have they met the requirements of pleading a trespass-to-try-title action. Therefore, Defendant's motion for summary judgment on Plaintiffs' trespass-to-title and quiet title claims is **GRANTED**.

## XI. ACCOUNTING

Plaintiffs' complaint requests "an Order for an accounting of all transactions on their mortgage loan."[135] "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action."[136] Plaintiffs have sought an accounting as a form of relief.[137] Because the court has granted summary judgment for

---

[130] *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).
[131] *Id.*
[132] *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007).
[133] *Rhodes v. Wells Fargo Bank, N.A.*, Civil Action No. 3:10-cv-02347-L, 2012 WL 5363424, at *34 (N.D. Tex. Oct. 31, 2012).
[134] *See id.*
[135] Pet. ¶ 36.
[136] *Brown v. Cooley Enters., Inc.*, No. 3:11-cv-0124-D, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011) (citing *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App.—Corpus Christi 2001, no pet.).
[137] Pl.'s Resp. 24.

Defendant on all of Plaintiffs' substantive claims, the court finds that Plaintiffs are not entitled to an accounting as an equitable remedy.

## XII.   DECLARATORY JUDGMENT, SPECIFIC PERFORMANCE, AND MALICE

The remainder of Plaintiffs' petition requests the remedies of a declaratory judgment, specific performance, and exemplary damages for malice. Declaratory judgment is remedial only, and depends upon the existence of a justiciable controversy between the parties. Because the court has granted summary judgment for Defendant on all of Plaintiffs' substantive claims, the court finds that Plaintiffs are not entitled to declaratory relief, specific performance, or exemplary damages.

## XIII.   CONCLUSION

Defendant's Motion for Summary Judgment (Dkt. 19) is hereby **GRANTED** and Plaintiffs' claims are **DISMISSED** with prejudice.

IT IS SO ORDERED.

**SIGNED this the 30th day of September, 2013.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE